**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 09-602-(12) |
| | : | |
| GREGORY GRAHAM | : | |

**MEMORANDUM**

JONES, II    J.                                                                                           August 23, 2021

**I.    INTRODUCTION**

Since the first cases of an unknown respiratory illness were reported in December 2019,[1] a localized outbreak of coronavirus disease 2019 ("COVID-19") quickly evolved into a global pandemic, causing a public health emergency of international concern. As of this writing, the World Health Organization has reported over 211 million confirmed cases of COVID-19 globally, including more than 4.4 million deaths.[2] In the United States alone, total reported cases now exceed 37 million, and deaths surpass 628,000.[3] In the context of this ongoing public health emergency, Gregory Graham has filed a motion requesting compassionate release from prison

---

[1] The World Health Organization ("WHO") traces the origin of COVID-19 to a local outbreak in Wuhan, China. *See Listings of WHO's response to COVID-19*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last updated Dec. 28, 2020) (reporting that the first cluster of COVID-19 cases emerged in December 2019).

[2] *WHO Coronavirus* (*COVID-19*) *Dashboard*, WORLD HEALTH ORGANIZATION, https://covid19.who.int (last updated Aug. 23, 2021).

[3] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. TIMES, https://www.nytimes.com/interactive/2021/us/covid-cases.html (last updated Aug. 23, 2021).

for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons set forth below, Mr. Graham's motion must be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying Criminal Conduct

Mr. Graham's conviction in this matter stems from his involvement in a violent drug conspiracy based in Darby, Pennsylvania. The group called themselves the Third Street Gang ("TSG"), among other names. Members of the TSG committed numerous acts of violence in furtherance of their conspiracy, as set forth in the Government's Response in Opposition to Mr. Graham's motion. *See* Gov't Resp. (ECF No. 997) at 2. Mr. Graham directly contributed to that violence when he and an accomplice conspired to kill a man "following a dispute about a stolen gun." *Id.* In connection with that crime, Mr. Graham pled "guilty to third-degree murder, and was sentenced to 10 to 20 years' imprisonment in state custody." *Id.* at 3. "Ultimately, [Mr. Graham] and other TSG members were federally indicted for their drug dealing activities." *Id.* In the instant matter, Mr. Graham was charged with and pled guilty to: (i) one count of conspiracy to distribute 280 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); (ii) one count of distribution of crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(C); and (iii) one count of distribution of cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. §§ 860 & 841(b)(1)(C).

On May 8, 2012, this Court sentenced Mr. Graham to 180 months' incarceration, to be followed by 6 years of supervised release. *See* Amended Judgment (ECF No. 846) at 2–3. As of

this writing, he is serving his sentence at FCI Petersburg (Medium) and is scheduled to be released from federal prison on February 16, 2025.[4]

### B. COVID-19 in Correctional and Detention Facilities

"Correctional and detention facilities present unique challenges for control of COVID-19 transmission among incarcerated/detained persons and staff. According to public health experts, incarcerated individuals are at special risk of infection, given their living situations, and may also be less able to participate in proactive measures to keep themselves safe; infection control is challenging in these settings." *United States v. Wilson*, No. 14-cr-209, 2020 WL 1975082, at *2 (E.D. Pa. Apr. 24, 2020) (internal quotation marks, alterations, and footnotes omitted). Since the outbreak of the pandemic, the Bureau of Prisons ("BOP") "has implemented a number of protocols to protect the inmate population and staff from COVID-19." *United States v. Stevens*, 454 F. Supp. 3d 472, 476 (E.D. Pa. 2020).

> Presently, BOP operations are governed by Phase Nine of the Action Plan. The current modified operations plan permits only limited group gathering and social distancing has largely been suspended. BOP has limited the movement of inmates and detainees among its facilities. Moreover, official staff travel has been suspended, as has most in-person staff training. BOP is endeavoring to regularly issue face masks to all staff and inmates, and strongly encourages masks to be worn in public areas where social distancing cannot be achieved.
>
> Inmates who travel outside of a BOP institution, such as for court appearances, are to be quarantined upon their return. Newly admitted inmates are screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates are placed in quarantine for at least 14 days or until cleared by medical staff. Symptomatic inmates are placed in medical isolation until they test negative for COVID-19 or are cleared by medical staff as meeting the CDC criteria for release from isolation. The Program Review Division will conduct unannounced site visits to ensure compliance with the Health Services Division and the CDC's guidance.

---

[4] *See Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Aug. 23, 2021).

*United States v. Ortiz Cabrera*, No. 18-cr-304, 2021 WL 411502, at *2 (E.D. Pa. Feb. 5, 2021). At FCI Petersburg (Medium), where Mr. Graham is incarcerated, there are currently no confirmed, active case of COVID-19 among either the inmate population or prison staff. *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021).

### C. Mr. Graham's Request for Compassionate Release

Mr. Graham filed a motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting compassionate release on the grounds that his history of smoking places him at high risk for complications arising from potential infection with COVID-19 while incarcerated. Br. in Supp. of Mot. for Release (ECF No. 988) at 1. The government filed a Response in Opposition to Mr. Graham's Motion, and, on August 2, 2021, filed a Supplemental Response in Opposition to the Motion informing the Court that Mr. Graham was offered the Pfizer COVID-19 vaccine on March 18, 2021—which he refused. (ECF Nos. 997 & 1008.) Mr. Graham's Motion is thus ripe for the Court's review.

## III. LEGAL STANDARDS

"'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also In re Morris*, 345 F. App'x 796, 797 (3d Cir. 2009) ("Once a term of imprisonment has been imposed, a district court has the authority to modify it only in limited circumstances."). One such exception is set forth in 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release." "As amended by the recently enacted First Step Act, § 3582(c)(1)(A)

empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies." *United States v. Moldover*, No. 14-637, 2020 WL 6731111, at *5 (E.D. Pa. Nov. 13, 2020).[5] Under § 3582(c)(1)(A)(i), a court may reduce an inmate's term of imprisonment only if the following conditions are met: (1) "the Court must find that extraordinary and compelling reasons warrant such a reduction"; (2) "any reduction granted by the Court must be consistent with any applicable policy statements issued by the Sentencing Commission"; and (3) "the proposed reduction must be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a)." *United States v. Brown*, No. 13-176-05, 2020 WL 2615616, at *1 (E.D. Pa. May 22, 2020) (internal quotation marks omitted).

"Although Congress has not defined the term 'extraordinary and compelling,' the Sentencing Commission has issued an application note to its relevant policy statement which provides guidance for defining the conjunctive term." *United States v. Ortiz Cabrera*, No. 18-304-01, 2021 WL 411502, at *3 (E.D. Pa. Feb. 5, 2021). As relevant here, Application Note 1 to Section 1B1.13 of the Sentencing Guidelines instructs that an "extraordinary and compelling" reason would be presented where a defendant is "suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." "In general, however, '[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19.'" *Moldover*,

---

[5] Here, the government does not dispute that Mr. Graham has complied with the statute's exhaustion requirement. *See* Gov't Opp'n (ECF No. 997) at 3 n.1.

2020 WL 6731111, at *7 (quoting *United States v. Sommerville*, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020)).

IV.   DISCUSSION

Mr. Graham has not shown that extraordinary and compelling reasons justify his release, as he was offered a vaccine protective against COVID-19, yet he refused to be vaccinated. *See* Gov't Supp'l Resp. (ECF No. 1008) at 1. The government has submitted that Mr. Graham has no known medical contraindication for the vaccine, and Mr. Graham has not claimed otherwise. *Id.* The U.S. Food and Drug Administration approved the Pfizer vaccine "for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease." *Id.* at 2 (citing FDA Decision Memorandum). Accordingly, the overwhelming majority of courts to consider the issue have concluded that the risk of contracting COVID-19 does not present an extraordinary and compelling reason for release when an inmate is offered the COVID-19 vaccine and refuses it, absent some medical contraindication. *See, e.g.*, *United States v. Ortiz*, No. 18-cr-264, 2021 WL 1422816, at *3 (E.D. Pa. Apr. 15, 2021) ("[The defendant's] refusal to be vaccinated in the absence of a legitimate medical justification is fatal to his motion for compassionate release."); *United States v. Bautista*, No. 19-cr-24, 2021 WL 1264596, at *5 (E.D. Pa. Apr. 6, 2021) ("[The defendant's] denial of the COVID-19 vaccine further weighs against finding an extraordinary and compelling reason for release."); *United States v. Jackson*, No. 07-cr-40, 2021 WL 1145903, at *5–6 (E.D. Pa. Mar. 25, 2021) (denying motion for compassionate release because the defendant refused a COVID-19 vaccine and thus voluntarily declined to "provide self-care"); *United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) ("Courts across the country appear to

have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief.") (collecting cases); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) ("A prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination."). As the court aptly stated in *United States v. Cooper*:

> While he is certainly well within his rights to make his own decisions as to his own medical care, the Court can reach no other conclusion but that if Defendant had any serious concerns or fears for his health, safety and well-being as a consequence of the coronavirus, he would have availed himself of the COVID-19 vaccine which was offered. Perhaps he ultimately will elect to do just that.

No. 01-cr-512, 2021 WL 1629258, at *7 (E.D. Pa. Apr. 27, 2021).

Mr. Graham was offered the Pfizer COVID-19 vaccine on March 18, 2021. He refused it without any known medical contraindication. Accordingly, he has not shown that extraordinary and compelling reasons exist to justify his release. Moreover, his status as a former smoker alone would not qualify as an extraordinary and compelling reason for his release in any event. *See, e.g.*, *United States v. Jones*, No. 02-cr-778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (denying compassionate release to former smoker who presented "no ailments associated with smoking"); *United States v. Hoopes*, No. 16-cr-509, 2020 WL 6889211, at *4 (E.D. Pa. Nov. 24, 2020) (denying compassionate release to 73-year-old former smoker with mild obesity); *Musa v. United States*, 502 F. Supp. 3d 803, 814 (S.D.N.Y. 2020) ("the mere assertion that a defendant is a former smoker is insufficient to merit release"). Mr. Graham is only thirty-six (36) years old and he presents no acute medical conditions associated with smoking. In sum, his circumstances fall far short of qualifying as "extraordinary and compelling."

But even if Mr. Graham had put forth extraordinary and compelling reasons to justify his release, consideration of the § 3553(a) sentencing factors would provide an independent basis on which to deny his Motion.  He has failed to show how his early release "would align with the statutory sentencing factors, notably the seriousness of his offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality."  *Hoopes*, 2020 WL 6889211, at *5.  *See United States v. Hall*, No. 06-cr-02, 2020 WL 6822948, at *3 (E.D. Pa. Nov. 19, 2020) (finding § 3553(a) factors did not support releasing defendant who had served 170 months of a 280-month sentence given his involvement in a drug distribution organization and conviction for "possession with intent to distribute cocaine near a school"); *United States v. Robinson*, No. 15-cr-496, 2020 WL 7056488 (E.D. Pa. Dec. 2, 2020) (finding that early release of the defendant "would fail to reflect the seriousness of conspiring to sell and personally distributing large quantities of PCP in a residential community, near a daycare and a university").

Mr. Graham asserts that he has made substantial rehabilitation efforts while incarcerated.  The Court does not doubt this, and commends him for his efforts.  However, "Congress has made it clear: '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason' for compassionate release."  *Hall*, 2020 WL 6822948, at *3 (quoting 28 U.S.C. § 994(t)).

The severity of the COVID-19 pandemic cannot be discounted, and the Court empathizes with Mr. Graham's concerns.  However, as the Third Circuit has held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *United States v. Raia*, 954 F.3d

594, 597 (3d Cir. 2020). "Thus, the Court must conduct a highly individualized inquiry . . . to determine whether COVID-19 in conjunction with [an inmate's] alleged underlying medical conditions constitute extraordinary and compelling reasons for a reduction of [his] sentence to time served." *United States v. Cantatore*, No. 16-0189, 2020 WL 2611536, at *3 (D.N.J. May 21, 2020). Though Mr. Graham's fears of exposure to COVID-19 while incarcerated are understandable, the health of inmates is of the utmost concern to the BOP, and the BOP has made many strides to protect the safety of both inmates and staff during these unprecedented times. As discussed above, the BOP has been: issuing face masks to all staff and inmates, encouraging social distancing, strengthening cleaning, and limiting social gatherings in all facilities.[6] Further, inmates who are symptomatic and/or test positive for COVID are placed in medical isolation, and those who are asymptomatic but have a risk of exposure are placed in quarantine.[7] These measures appear to be having their intended effect; as discussed above, there are currently no confirmed, active cases of COVID-19 among either the inmate population or staff at FCI Petersburg (Medium), the institution where Mr. Graham is incarcerated.

### V. CONCLUSION

The Court concludes that Mr. Graham has not demonstrated extraordinary and compelling reasons justifying his release under 18 U.S.C. § 3582(c)(1)(A) and § 1B1.13 of the Sentencing Guidelines. For the foregoing reasons, his Motion for Release will be denied with leave to re-file, should any pertinent circumstances change.

---

[6] *See BOP Modified Operations*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

[7] *See id.*

An appropriate order follows.

                                        BY THE COURT:

                                        /s/ C. Darnell Jones, II
                                        C. Darnell Jones, II    J.